IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

ERIC SNYDER,

        Plaintiff,

  vs.                              **Case No. 11-1010-RDR**

MICHAEL J. ASTRUE,
Commissioner of Social
Security,
        Defendant.

**MEMORANDUM AND ORDER**

On December 13, 2007, plaintiff filed applications for social security disability insurance benefits and supplemental security income benefits. These applications alleged a disability onset date of February 5, 2005. On February 26, 2009, a hearing was conducted upon plaintiff's applications. The administrative law judge (ALJ) considered the evidence and decided on May 6, 2009 that plaintiff was not qualified to receive benefits. This decision has been adopted by defendant. This case is now before the court upon plaintiff's motion to reverse and remand the decision to deny plaintiff's applications for benefits.

I. STANDARD OF REVIEW

To qualify for disability benefits, a claimant must establish that he or she was "disabled" under the Social Security Act, 42 U.S.C. § 423(a)(1)(E), during the time when the claimant had "insured status" under the Social Security program. See <u>Potter v. Secretary of Health & Human Services</u>, 905 F.2d 1346, 1347 (10th Cir.

1990); 20 C.F.R. §§ 404.130, 404.131. To be "disabled" means that the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

For supplemental security income claims, a claimant becomes eligible in the first month where he or she is both disabled and has an application on file. 20 C.F.R. §§ 416.202-03, 416.330, 416.335.

The court must affirm the ALJ's decision if it is supported by substantial evidence and if the ALJ applied the proper legal standards. Rebeck v. Barnhart, 317 F.Supp.2d 1263, 1271 (D.Kan. 2004). "Substantial evidence" is "more than a mere scintilla;" it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id., quoting Richardson v. Perales, 402 U.S. 389, 401 (1971). The court must examine the record as a whole, including whatever in the record fairly detracts from the weight of the defendant's decision, and on that basis decide if substantial evidence supports the defendant's decision. Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994) (quoting Casias v. Secretary of Health & Human Services, 933 F.2d 799, 800-01 (10th Cir. 1991)). The court may not reverse the defendant's choice between two reasonable but conflicting views, even if the court

would have made a different choice if the matter were referred to the court de novo. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting Zoltanski v. F.A.A., 372 F.3d 1195, 1200 (10th Cir. 2004)).

II. THE ALJ'S DECISION (Tr. 11-18).

There is a five-step evaluation process followed in these cases which is described in the ALJ's decision. (Tr. 12-13). First, it is determined whether the claimant is engaging in substantial gainful activity. Second, the ALJ decides whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments which are "severe." At step three, the ALJ decides whether the claimant's impairments or combination of impairments meet or medically equal the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1. Next, the ALJ determines the claimant's residual functional capacity and then decides whether the claimant has the residual functional capacity to perform the requirements of his or her past relevant work. Finally, at the last step of the sequential evaluation process the ALJ determines whether the claimant is able to do any other work considering his or her residual functional capacity, age, education and work experience.

In this case, the ALJ decided plaintiff's application should be denied on the basis of the fifth and last step of the evaluation process. The ALJ decided that plaintiff maintained the residual

functional capacity to perform jobs that existed in significant numbers in the national economy.

The ALJ made the following specific findings in his decision. First, plaintiff meets the insured status requirements for Social Security benefits through June 30, 2009. Second, plaintiff did not engage in substantial gainful activity after February 5, 2005, the alleged onset date of disability. Third, plaintiff has the following severe impairments: degenerative disc disease of the spine; status post laminectomy and L4-L5 fusion; and a foot drop. Fourth, plaintiff does not have an impairment or combination of impairments that meet or medically equal the Listed Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Fifth, plaintiff has the residual functional capacity to perform:

> sedentary work . . . in that [plaintiff] can lift 10 pounds; stand and/or walk for about 2 hours out of an 8 hour workday with normal breaks; sit for up to 6 hours out of an 8 hour workday with normal breaks; and push and pull the same weights except [plaintiff] must alternate positions, sitting and standing every 30 minutes while remaining at his work station; cannot climb ladders, ropes, or scaffolding and must avoid unprotected heights and dangerous moving machinery.

(Tr. 14). Sixth, plaintiff was unable to perform any past relevant work. But, seventh, plaintiff was capable of performing jobs that existed in significant numbers in the national economy, such as: order clerk, food and beverage; polisher; and stuffer. (Tr. 18). This last finding was based upon the testimony of a vocational expert, and the ALJ considered plaintiff's age, education, work

4

experience and residual functional capacity. The ALJ found that the vocational expert's testimony was consistent with the information contained in the Dictionary of Occupational Titles (DOT). In addition, the ALJ commented:

> the vocational expert did report that the Dictionary of Occupational Titles does not set forth information about the ability to alternate sitting and standing and that his testimony was based upon his more than eighteen years of providing on-the-job placement, ergonomics and job training.

(Tr. 18).

III. FACTUAL BACKGROUND

Plaintiff was born in 1972. He has complained of chronic low back pain for several years. One report suggests that the pain started approximately in 1994. (Tr. 291). He has worked as a packer. His last job was as an inventory control specialist. Plaintiff stopped working at this job in February 2005. On June 30, 2006, plaintiff was diagnosed with multilevel lumbar degenerative disc disease, mild. (Tr. 292). Plaintiff had back fusion surgery in November 2006. On April 13, 2007, plaintiff complained of increased low back pain. X-rays did not reveal an "acute abnormality." (Tr. 270). Lortab was prescribed. (Tr. 266). Plaintiff visited the doctor again on May 3, 2007. He reported severe pain; 9 on a 10-point scale. (Tr. 264). Plaintiff was referred to Dr. Gorecki.

Dr. Gorecki noted from his first examination of plaintiff on July 3, 2007 that:

5

> [Plaintiff's] symptoms have been worse ever since surgery with increased constant spontaneous dull aching low back pain with superimposed sharp mechanical type back pain also associated with bilateral hip pain and pain extending into both legs radiating down into an L5 pattern with dysesthetic tingling in the lateral calf which was not present preoperatively. . . . Pain score 8-10 out of 10.
> . . . .
>
> [Plaintiff] has significant paraspinal muscle tenderness. He has a severely restricted range of motion in the lumbar spine. Severely restricted straight leg raise bilaterally.

(Tr. 323-24). Dr. Gorecki recommended a CT scan, an MRI, x-rays and EMG nerve conduction studies. (Tr. 325). But, from his view of the "plain x-rays," Dr. Gorecki concluded that plaintiff "has a nonunion." (Tr. 322).

A CT scan was performed on July 23, 2007. Dr. Kadison, the radiologist who reviewed the scan, commented:

> No definite pathology noted. The problem is L4-L5 and L5-S1. I cannot separate the sac from the disc or even the surrounding structures because of all the artifact from the laminar screws as well as artifact from the patient's size. As far as the previous surgery, it is functioning perfectly. There is no loosening or infection in the screws. The alignment is excellent.

(Tr. 318). After an MRI of the lumbar spine was conducted on August 6, 2007, Dr. Degner, a radiologist, stated:

> There are changes of previous laminectomy and fusion at L4-L5. There is normal height alignment of the vertebral bodies. Disc spaces are well maintained. There is no disc herniation or bony stenosis seen at any level. There is no soft tissue mass or abnormal enhancement to suggest any significant scar formation. There is no acute bony abnormality.

(Tr. 310).

6

However, Dr. Gorecki commented on August 11, 2007:

> I reviewed his studies, including plain x-rays, MRI, and CT of the lumbar spine. The report is that everything is negative. I thought there was a lack of bony fusion and I thought there was maybe a little bit of lucency around some of the screws. I also wondered if the L4 screw on the left may be was in the canal. The EMG/nerve conduction studies were normal.

(Tr. 321).

Plaintiff had another doctor's visit for pain on October 15, 2007. At this visit, Dr. Presley noted that plaintiff's back was "tender to palpation over the lumbar region spinal and paraspinal area." (Tr. 263). He also noted "decreased range of motion secondary to prior injury" and "pain down legs with straight leg raise test at approx. 25 degrees." (Tr. 263). Approximately one month later, on November 20, 2007, plaintiff returned with the same complaints and a request for a new pain doctor. (Tr. 261). It was observed that plaintiff's "[m]otor strength is 5/5 bilaterally. Gait is steady. Coordination is intact." (Tr. 261).

On January 7, 2008, plaintiff returned to the pain doctor. His "chief complaint" was described as "paper work issues regarding restrictions at work" and "chronic pain." (Tr. 274). The report from plaintiff's visit stated that plaintiff wanted:

> clarification of work restrictions because his current recommendations from the neurosurgeon [Dr. Gorecki] are that [plaintiff] can work 4-6 hours per day. [Plaintiff] reports that the intent of this was so [plaintiff] could work up to 6 if he felt that he could tolerate it, but that 4 hrs was the initial [recommendation]. [Plaintiff] reports that SRS says that he can work full-time if he can work 6 hrs/day, so [plaintiff] presents to get a

7

letter explaining that he can only work 4 hours/day. (Tr. 274). Plaintiff was referred to Dr. Gorecki.

The next day, Dr. Gorecki wrote a letter "TO WHOM IT MAY CONCERN" stating that:

> [plaintiff] has a nonunion with malignancy-placed screw following lumbar instrumented fusion . . . He has ongoing incapacitating back and bilateral hip pain.
>
> The symptoms restrict him to working no more than four hours per day. He cannot bend forward or stoop at all. He cannot pick anything up from floor level and his maximum lifting is ten pounds from knuckle level.

(Tr. 320).

On February 13, 2008, Daniel Dalton, a medical consultant/single decision maker, completed a physical residual functional capacity (RFC) assessment form regarding plaintiff. The assessment concluded that plaintiff could frequently lift or carry ten pounds, stand for at least two hours and sit about six hours with normal breaks, and push and or pull without limitations. (Tr. 327). The assessment continued that plaintiff could "occasionally" climb, stoop, kneel, crouch or crawl and that plaintiff could never balance. (Tr. 328). The medical consultant made reference to the CT and MRI findings in July and August 2007. He also noted that plaintiff continues to drive, has no problems managing personal care, takes his son to school, can lift 5 to 20 pounds and alleges he can do minimal orthopedic maneuvers. It is curious that the consultant marked that there were no "treating/examining source conclusions about [plaintiff's] limitations or restrictions which

8

are significantly different from" his findings and that he referred to Dr. Gorecki's conclusion that plaintiff could work "no more than 4 hours at a time" as a "specific fact upon which" the consultant's conclusions were based. (Tr. 332 and 327). Actually, Dr. Gorecki stated that plaintiff could work no more than four hours per day. (Tr. 320).

On March 24, 2008, plaintiff made another pain visit. The pain was described as "chronic," "sharp" and "unchanged." (Tr. 279). An examination revealed "tenderness in paraspinous muscles in lumbosacral spine region" and straight leg raising "positive for pain greater in left than right." (Tr. 279-80). An abnormal gait/station was noted. (Tr. 280). Normal range of motion was noted in the examination of plaintiff's neck. (Tr. 279). Plaintiff was continued on Lortab.

Plaintiff's situation was reviewed and reconsidered by another single decision maker, Jessica A. Rother, on April 3, 2008. Her review affirmed the RFC conclusions of Mr. Dalton and explained that her consideration of the medical evidence on file showed:

> Disc spaces well maintained. No disc herniation, stenosis, or acute bony abnormalities. Exam from 11/07 noted normal [range of motion], 5/5 motor strength, gait was steady, coordination was intact. . . . Note from 03/24/08 was again [within normal limits] and does not note any significant changes from previous exam in 11/07. . . . RFC in the file was written for a restricted light (sedentary) work. [Plaintiff] reports on [reconsideration] that he is having greater pain and discomfort. No new allegations are reported, no changes in daily activities. Review done and RFC is appropriate with updated evidence.

9

(Tr. 334). The evidence and findings were appraised by Dr. C.A. Parsons who made the following statement: "Evidence reviewed; prior RFC of 2/13/08 [by Mr. Dalton] is hereby affirmed." (Tr. 335).

The opinions of Dalton and Rother (as affirmed by Dr. Parsons) were given the "most probative weight" by the ALJ. (Tr. 15). The ALJ found:

> Although the State agency medical consultants did not examine [plaintiff], they provided specific reasons for their opinions about [plaintiff's] residual functional capacity showing that these opinions were grounded in the evidence of record, including careful consideration of the objective medical evidence and [plaintiff's] allegations regarding symptoms and limitations. The opinions are internally consistent and consistent with the evidence as a whole.

(Tr. 15).

It appears that plaintiff's next doctor's visit was on June 24, 2008, but there is no indication that he was examined. On July 3, 2008, he returned with a complaint of bilateral hip pain which was described as a dull ache which was fluctuating but persistent. (Tr. 351). The examination noted that plaintiff's spine was "positive for posterior tenderness" but that the straight leg raising test and elevated leg test were negative. (Tr. 352). Plaintiff's chronic low back pain was also reflected in the record. (Tr. 352).

On October 13, 2008, plaintiff made a doctor's visit for sinusitis. During a physical examination, the nurse assessed that

plaintiff "is experiencing pain . . . with an intensity of 9. The pain is located in the lower back. The pain is described as dull, sharp. . . . It is relieved by medication. The pain is not limiting the [plaintiff's] activities. [Plaintiff] experiences moderate relief from the pain treatment." (Tr. 374). An inspection of plaintiff's back revealed "no abnormality. Spine is negative for posterior tenderness. . . . General [movement] of the back is all pain limited." (Tr. 374).

On January 9, 2009, Dr. Gorecki repeated his findings that CT and x-ray scans suggest non-union following back fusion surgery. (Tr. 355). He concluded that plaintiff could only work about 4 hours during an 8-hour working day. (Tr. 356). He said that plaintiff would frequently have pain so severe that it would interfere with the attention and concentration to perform even simple work tasks and that plaintiff needed a job that would allow him to shift positions at will from sitting, standing or walking. (Tr. 356-57). He also concluded that plaintiff should never stoop, crouch or squat, and only rarely twist. (Tr. 357).

IV. ARGUMENTS AND ANALYSIS

Plaintiff makes two main arguments to reverse the decision to deny benefits. Plaintiff argues that: 1) the ALJ's RFC assessment is not supported by substantial evidence; and 2) the ALJ erred when he did not resolve a conflict between the vocational expert's testimony and the Dictionary of Occupational Titles. The court

will only discuss the first argument in this opinion.

Plaintiff contends that substantial evidence does not support the ALJ's RFC assessment because the ALJ's decision gave too much weight to the opinions of state agency single decision makers who never examined plaintiff, and too little weight to the opinion of Dr. Gorecki, a surgeon who examined plaintiff twice. Plaintiff acknowledges that Dr. Parsons eventually signed off without elaboration upon the conclusions of the single decision makers. Thus, those conclusions became a "medical opinion" for the purposes of disability benefit analysis and must be considered and weighed accordingly. Thongleuth v. Astrue, 2011 WL 1303374 * 12 (D.Kan. 4/4/2011). Plaintiff contends, however, that Dr. Parsons' eight-word statement affirming the assessments of the single decision makers does not constitute substantial evidence in support of the ALJ's decision.

The Social Security regulations provide at 20 C.F.R. § 404.1527(c) that in evaluating opinion evidence:

> (2) If any of the evidence in your case record, including any medical opinion(s), is inconsistent with other evidence or is internally inconsistent, we will weigh all of the evidence and see whether we can decide whether you are disabled based on the evidence we have.
>
> (3) If the evidence is consistent but we do not have sufficient evidence to decide whether you are disabled, or if after weighing the evidence we decide we cannot reach a conclusion about whether you are disabled, we will try to obtain additional evidence . . . We will request additional existing records, recontact your treating sources or any other examining sources, ask you to undergo a consultative examination at our expense, or

ask you or others for more information.

Generally, more weight is given "to the opinion of a source who has examined [the claimant] than to the opinion of a source who has not examined [the claimant]." § 404.1527(d)(1).

Contrary to this general rule, the ALJ gave more weight to the opinions of non-examining sources. The ALJ reached this decision because he felt that those opinions had greater support from objective evidence regarding the success of the back fusion surgery and because those opinions were more internally consistent and consistent with the record as a whole. We reject the ALJ's analysis for the following reasons.

First, the objective evidence (x-rays, CT scans and MRIs) regarding plaintiff's back surgery were interpreted differently by Dr. Gorecki than by the radiologists. The ALJ did not explain why Dr. Gorecki's opinion regarding that evidence is entitled to less weight. Nor did the ALJ attempt to expand the record by obtaining an additional opinion which might confirm or deny the existence of a pain-producing condition after surgery. Additionally, the radiologists did not state directly that plaintiff's back, after the surgery, was pain-free or that there was no pain-producing condition. Indeed, the ALJ conceded the existence (but not the severity) of plaintiff's pain when he stated that post-surgery plaintiff "experiences low back pain and as a result has significant functional limitations." (Tr. 15).

13

Second, the ALJ's conclusion that the opinions of the single decision makers are internally consistent and consistent with the evidence as a whole is not well-supported. The ALJ effectively chose their opinions over the opinion of an examining doctor (Dr. Gorecki), even though the RFC statement cited favorably by the ALJ states that Dr. Gorecki's opinion is supportive and not significantly different from the RFC statement. This appears to be an obvious internal inconsistency. In addition, one single decision maker stated that plaintiff's examination in November 2007 showed "normal range of motion," when that finding is not present in the record of the November 20, 2007 examination. (Tr. 261). She also stated that the examination in March 2008 was within normal limits, when abnormalities were listed in the record of that examination. (Tr. 279-80).

Third, the ALJ and the single decision makers appeared to ignore objective evidence in support of Dr. Gorecki's opinion. The ALJ stated that he gave little weight to Dr. Gorecki's opinion because it was "quite conclusory" and provided "little explanation of the evidence relied on in forming" the opinion. (Tr. 15). In making this point, the ALJ overlooked Dr. Gorecki's findings (stated above) that plaintiff "cannot bend forward or stoop at all," that he "cannot pick anything up from floor level and his maximum lifting is ten pounds from knuckle level." The ALJ also ignored that Dr. Gorecki's examination of plaintiff found that:

14

"[plaintiff] has a severely restricted range of motion in the lumbar spine" and "[s]everely restricted straight leg raise bilaterally." (Tr. 324).

Fourth, the ALJ's decision appears to ignore case law and regulations which recognize that low back disorders can affect different people differently. The Tenth Circuit has stated: "an impairment likely to produce <u>some</u> back pain may reasonably be expected to produce <u>severe</u> back pain in a particular claimant." <u>Luna v. Bowen</u>, 834 F.2d 161, 164 (10th Cir. 1987). Social Security regulations have similarly stated:

> Pain or other symptoms may cause a limitation of function beyond that which can be determined on the basis of the anatomical, physiological or psychological abnormalities considered along; e.g., someone with a low back disorder may be fully capable of the physical demands consistent with those of sustained medium work activity, but another person with the same disorder, because of pain, may not be capable of more than the physical demands consistent with those of light work activity on a sustained basis.

20 C.F.R. § 404.1545(e). In evaluating plaintiff's reaction to his low back disorder, it seems important to give careful consideration to the opinion of a doctor who has actually examined the plaintiff and to be less disposed to rely upon a doctor who has never examined the plaintiff. See <u>Ynocencio v. Barnhart</u>, 300 F.Supp.2d 646, 659 (N.D.Ill. 2004).

Finally, the court acknowledges that the ALJ must consider objective and subjective evidence of pain in a case such as this. <u>Wilson v. Astrue</u>, 602 F.3d 1136, 1144 (10th Cir. 2010). The ALJ

15

should consider various factors, such as:

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

Wilson, 602 F.3d at 1145 (quoting Branum v. Barnhart, 385 F.3d 1268, 1273-74 (10th Cir. 2004)).

The court is cognizant of the ALJ's analysis of these factors. Our review of the record persuades the court that none of these factors is so supportive of the ALJ's decision that the errors in evaluating the medical opinions were harmless or did not affect the administrative result. Plaintiff has consistently taken pain medication. He has made multiple visits to a pain clinic and expressed frustration with the lack of relief. His daily activities, his desire to obtain the assistance to which he may be entitled, and any inconsistencies in his prior statements cannot be considered determinative on this record.

V. CONCLUSION

The court agrees with plaintiff that substantial evidence does not support the ALJ's RFC assessment. The ALJ's RFC assessment is based upon an analysis which gives undue weight to the opinions of single decision makers as affirmed in a cursory statement by a medical doctor. Contrary to the ALJ's decision, those opinions

have internal inconsistencies and are inconsistent with parts of the medical record.  Those opinions are also rendered by persons who never examined plaintiff, which appears to make their task of evaluating plaintiff's pain particularly challenging.  In addition, the ALJ rejects the analysis of an examining physician without explaining why his review of the objective evidence is less reliable than the review of the radiologists and without explaining why the radiologists' review of the objective evidence is inconsistent with plaintiff's complaints of pain - - complaints which the ALJ accepts to some degree.

In light of this finding, the court need not discuss plaintiff's other argument for reversal.  The court shall reverse defendant's decision to deny plaintiff's applications for benefits.  The court shall direct that this case be remanded to the Commissioner for further proceedings consistent with this opinion.  This remand is made under the fourth sentence of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**

Dated this 8th day of July, 2011 at Topeka, Kansas.

s/Richard D. Rogers
United States District Judge